**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MICHAEL KNIGHT, *et al.*,          )
                                   )
              Plaintiffs,          )
                                   )          **Case No. 11-1143-EFM-KGS**
v.                                 )
                                   )
MILL-TEL, INC.                     )
                                   )
              Defendant.           )

---

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION OF FLSA CLAIMS**

Defendant Mill-Tel, Inc. ("Defendant") respectfully requests that the Court deny Plaintiffs' Motion for Conditional Class Certification of Class Claims Under § 216(b) of the FLSA ("Motion for Certification") (Doc. 57).

## INTRODUCTION

Plaintiffs argue this lawsuit should be certified as a collective action and that notice should be sent to all Installation Technicians employed in any of Defendant's five locations at any time within the three-year period prior to certification. Plaintiffs failed to present evidence sufficient to establish the single decision, policy or plan required for certification based on alleged violation of the Fair Labor Standards Act ("FLSA"). In fact, Plaintiffs' own motion reveals the fatal error in their position. Plaintiffs admit that Defendant's "**policies, practices and procedures appear to have changed over the years**." (Doc. 58, p. 6) (emphasis added) This admission, standing alone, is sufficient to defeat Plaintiffs' attempt at certification. When taken in context with the material facts and Plaintiffs' own testimonies on the matter, it becomes even more evident that Plaintiffs are not similarly situated to the proposed class which they now seek to certify.

Defendant employs Installation Technicians to perform work at the homes and/or businesses of Defendant's cable-company customers. Defendant compensates – and has always compensated – its employees for overtime hours worked during the relevant period. Defendant does not maintain any policy, practice or plan to deprive Installation Technicians of their pay. Instead, Defendant has implemented a policy requiring pre-approval of overtime hours and of reducing hours worked if employees begin to approach 40 in a workweek. There is nothing unlawful about this plan. Employers have the right and privilege to control the workflow of their employees. The fact that Plaintiffs held the same job titles and that one or more of the Plaintiffs may have *individualized* evidence to support a claim for overtime compensation under the particular policy applicable to that Plaintiff is not sufficient for conditional certification. Absent a common decision, policy or plan (of which there is none), conditional certification must be denied.

## STATEMENT OF FACTS[1]

1.      Plaintiff Michael Knight was employed from March 16, 2010 to August 27, 2010. (Exhibit A, Mallett Declaration, ¶ 20)

2.      Plaintiff Byron Richard was employed from April 28, 2008 to October 31, 2008. (Mallett Declaration, ¶ 21)

3.      Anthony Allen was hired on August 2, 2010 and his last day worked was August 31, 2010. (Mallett Declaration, ¶ 19)

4.      Lynn Talbott was employed from July 24, 2007 to November 7, 2011. (Mallett Declaration, ¶ 22)

---

[1] Defendant denies each and every one of Plaintiffs' Alleged Statement of Facts. Defendant also incorporates by reference additional facts contained in its Arguments and Authorities.

KansasCity 245494.2

5.      Dennis Baker was employed from June 23, 2010 to December 30, 2011.  (Mallett Declaration, ¶ 24)

6.      Mill-Tel, Inc.'s policy is and was to require Installation Technicians to record accurate and complete hours worked and mileage driven on their daily and weekly summaries. The Mill-Tel, Inc. Employee Handbook informed Installation Technicians that any overtime hours worked must receive prior approval from their individual supervisors.   (Mallett Declaration, ¶ 5)  Should overtime occur, however, Defendant's policy is and was to compensate Installation Technicians for that time.  (Mallett Declaration, ¶ 6)

7.      From February 7, 2009 to December 15, 2009, Installation Technicians were paid on a piecerate basis and were required to record their time worked on daily and weekly summaries.  (Mallett Declaration, ¶¶ 3-4)

8.       From December 15, 2009 to April 29, 2011, Installation Technicians recorded and reported all hours worked on a web-based timekeeping system.  (Mallett Declaration, ¶¶ 9-11)

9.      From March 11, 2011 to present, Installation Technicians have been compensated on an hourly-plus-production-bonus method of compensation.  (Mallett Declaration, ¶ 12)  Under this compensation system, Installation Technicians are compensated at a set hourly rate for all hours worked under 40 in a workweek, at time and one half for all hours worked over 40 in a workweek, and receive a production bonus.  (Mallett Declaration, ¶ 12)

10.      From April 29, 2011 to present, Installation Technicians have recorded and reported all hours worked directly to Mill-Tel's workforce management software.  (Mallett Declaration, ¶¶ 13-15)

KansasCity 245494.2

## ARGUMENT AND AUTHORITIES

### I.      Standard for Conditional Certification of a Collective Action.

The FLSA collective action mechanism states that "[a]n action to recover . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Whether Plaintiffs in this case may maintain a § 216(b) action, then, depends on whether they are "similarly situated" to other putative opt-in plaintiffs.  Although § 216(b) does not define the term "similarly situated," the Tenth Circuit has endorsed a two-step ad hoc method of determination.  *Theissen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).  "Under the ad hoc method, a court typically makes an initial notice stage determination of whether plaintiffs are similarly situated." *Armstrong v. Genesh,* Case No. 11-1161-CM, 2011 U.S. Dist. LEXIS 142722, at *3 (D. Kan. Dec. 12, 2011) (citations and internal quotations omitted).  At the conclusion of discovery, the court then makes a second determination, utilizing a stricter standard of "similarly situated." *Theissen,* 267 F.3d at 1102-03 (citations omitted).  The initial determination requires "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.*   Although the standard at this stage is often described as somewhat lenient, **substantial** allegations are still required.   Plaintiffs seek to turn the "lenient standard" for conditional certification into a standard so low as to be virtually non-existent.  While Defendant agrees that "actual proof" is not required at this stage, Plaintiffs must, at the very least, factually support their allegations that they are similarly situated to the putative opt-in plaintiffs.   A standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic.  Because Plaintiffs do not meet this burden – either individually or collectively – their motion for conditional certification must be denied.

II.     **Plaintiffs Cannot Establish a Single Decision, Policy or Plan.**[2]

As Plaintiffs correctly admit in their motion, Defendant's "**policies, practices and procedures appear to have changed over the years**." (Doc. 58, p. 6) (emphasis added)  Most of these changes occurred within the three-year period Plaintiffs now argue forms the basis for their certification motion.[3]  As of February 7, 2009, Installation Technicians were paid on a piecerate basis and were required to record their time worked on daily and weekly summaries. (Exhibit A, Mallett Declaration, ¶ 3)  Those summaries were then turned in to their individual supervisors for approval before they were submitted to payroll for processing.   (Mallett Declaration, ¶ 3)  Defendant compensated Installation Technicians on a piecerate basis for all hours worked under 40 in a workweek and at time and one half for any hours worked over 40 in a workweek.  (Mallett Declaration, ¶ 3)  The submission of daily time summaries allowed Defendant to monitor the workflow of its employees and to make scheduling adjustments if and when employees approached 40 hours in a workweek, so as not to incur overtime costs.  (Mallett Declaration, ¶ 4)  The Employee Handbook also informed Installation Technicians that any overtime hours worked must receive prior approval from their individual supervisors.  (Mallett Declaration, ¶ 5)  Should overtime occur, however, Defendant's policy is and was to compensate Installation Technicians for that time.  (Mallett Declaration, ¶ 6)

As Plaintiffs indicated in their motion for certification, a prior overtime lawsuit alleging failure to pay overtime compensation to Installation Technicians was filed against Defendant on October 2, 2009.  *See Price v. Mill-Tel, Inc.,* Case No. 09-2513 (D. Kan.) (Mallett Declaration, ¶

---

[2] Plaintiffs also state a claim for unlawful deductions under the Kansas Wage Payment Act.  Because this response relates only to certification of FLSA claims, Defendant's discussion of its compensation system will not include a discussion of any policy or practice related to deductions.

[3] Plaintiffs filed their Motion for Certification on February 7, 2012 and requested tolling of the statute of limitations during the pendency of their motion.  Therefore, Defendant will assume (without admitting) a period of February 7, 2009 to February 7, 2012 for purposes of this response.

7).  As a result of the *Price* lawsuit, Defendant issued a policy memorandum to all Installation Technicians on April 30, 2010, reiterating the company's overtime and time-recording policy. (Mallett Declaration, ¶ 8)  That memorandum specifically informed Installation Technicians that it was their (the Installation Technicians') responsibility to record <u>accurate</u> and <u>complete</u> hours worked and mileage driven on their daily and weekly summaries.  (Mallett Declaration, ¶ 8) (emphasis added)  In other words, the Defendant's overtime policy before and after April of 2010 was to compensate Installation Technicians on a piecerate basis, to ensure the payment of overtime based on time records created and submitted by the Installation Technicians on their daily and weekly summaries, and to require pre-approval of overtime hours.

The first material policy shift within the purported three-year limitations period occurred on December 15, 2010.  At that time, Defendant's Installation Technicians switched to a web-based timekeeping system.  (Mallett Declaration, ¶ 9)  Using the web-based timekeeping system, Installation Technicians were expected to record their clock-in and clock-out times on a secure internet website.  (Mallett Declaration, ¶ 9)  The purpose of the switch from a paper-based system to a web-based system was to ensure Installation Technicians were accurately reporting all hours worked and to maintain accurate and complete time records.  (Mallett Declaration, ¶ 10)  The data from the web-based system was then exported to Defendant's workforce management software, "Penguin Data."  (Mallett Declaration, ¶ 11)

The second material policy shift within the purported three-year limitations period occurred on March 11, 2011.[4]  At that time, Defendant switched from a piecerate method of

---

[4] Defendant took the position in response to Plaintiffs' written discovery that information or documents outside the scope of the named Plaintiffs' periods of employment were irrelevant and overly broad given the uncertified nature of Plaintiffs' claims and given the fact that a large number of Installation Technicians' claims were released as part of prior settlements.  (*See* Defendant's Motion to Preclude, Docs. 26-27)  As discussed herein, the only policy relevant to any of the three named Plaintiffs was the policy in place prior to March 11, 2011.  Because Plaintiffs submitted declarations in support of their motion for certification from two additional employees whose periods of employment spanned a considerably longer time period, Defendant provides the additional information herein and

compensation to an hourly-plus-production-bonus method of compensation.  (Mallett Declaration, ¶ 12)  Under this compensation system, Installation Technicians are compensated at a set hourly rate for all hours worked under 40 in a workweek, at time and one half for all hours worked over 40 in a workweek, and receive a production bonus.  (Mallett Declaration, ¶ 12)

The third and final material policy shift within the purported three-year limitations period occurred on April 29, 2011.  At that time, Defendant's Installation Technicians began using the current internet-based timekeeping system.  On the new system, Installation Technicians clock-in and clock-out directly to the Penguin Data program, thus eliminating the need for use of the prior web-based system and eliminating the need to export data from the prior web-based system to the Penguin Data program.  (Mallett Declaration, ¶ 13)  Most, but not all, Installation Technicians have access to the Penguin Data program on company-provided Blackberries. (Mallett Declaration, ¶ 14)  The Blackberry system allows Installation Technicians to clock in and out in real time, using phones they carry on their persons.  (Mallett Declaration, ¶ 14)  The administrative assistants at each location "release" the Installation Technician's time entries, and those entries are submitted to payroll for processing.  (Mallett Declaration, ¶ 15)  Installation Technicians also have the capability to record start and stop times of individual installation jobs on third-party software called "ETA."  (Mallett Declaration, ¶ 16)  The ETA system is provided for purposes of allowing Defendant's clients (the cable companies) to track the time it takes to complete a work order.  (Mallett Declaration, ¶ 16)  Defendant compensates Installation Technicians based on their clock-in and clock-out times, and not on the job start and stop times entered in the ETA software.  (Mallett Declaration, ¶ 17)  However, should there ever be an

---

relies on the changes in policies to oppose certification.  Furthermore, Plaintiffs served a 30(b)(6) deposition notice on Defendant which covered a broader period than the period during which the three named Plaintiffs were employed, and Defendant raised no objections to the deposition notice.  Plaintiffs voluntarily cancelled the 30(b)(6) deposition, however, and never rescheduled.  The corporate representatives would have testified to the policies in place after the employment of the three named Plaintiffs.

inconsistency in the Penguin Data system, or should an Installation Technician fail to clock-in or clock-out of the Penguin Data system, Defendant may utilize the ETA data to assist the Installation Technician in recreating his or her time record.  (Mallett Declaration, ¶ 18)  In such cases, the Installation Technician acknowledges the accuracy of the "reconstructed" time – in writing – before any change is made to his or her time records.  (Mallett Declaration, ¶ 18)

Plaintiffs submitted five nearly-identical sworn statements in support of their motion for certification and cite to those sworn statements as evidence of a common decision, policy or plan.  The fact that the statements were authored to mirror one another does not in and of itself evidence a common underlying policy.  In fact, the deposition testimonies of Anthony Allen and Plaintiffs Knight and Richard contradict the information in their sworn statements, and demonstrate the broad, conclusory statements therein to be false.  Allen testified as follows:

> Q.    Mr. Allen, how are installation technicians in Omaha compensated?
>
> A.    I have no idea.
>
> Q.    How are installation technicians in Kansas City compensated?
>
> A.    It's probably the same way because I know they got a Mill-Tel here in Kansas City.
>
> Q.    You say it's probably the same way.  Do you have any knowledge about how they're compensated?
>
> A.    No, ma'am.

(Exhibit B, Allen Depo. 124:14 – 124:24)   Plaintiff Knight similarly testified he has no knowledge as to how Installation Technicians in Omaha and Wichita are compensated, and in fact, testified he had no knowledge that Defendant even had an Omaha office.  (Exhibit C, Knight Depo. 124:17 – 124:24)  Finally, Plaintiff Richard testified he has no knowledge as to how Defendant compensates its Installation Technicians at its Wichita, Oklahoma City or

Arkansas offices.  (Exhibit D, Richard Depo. 102:22 – 103:11)  Plaintiffs' testimonies are in stark contrast – and in stark contradiction – to their sworn statements which make global, conclusory assertions regarding Defendant's company-wide pay practices.  *See generally,* Sworn Statements, ¶ 5 ("During my employment with Mill-Tel, Inc., it is my understanding that Mill-Tell, Inc. regularly employed numerous other installation technicians throughout the United States who . . . were compensated pursuant to the same compensation policies, practices and/or procedures created by Mill-Tel, Inc.").

The same is true of the identical assertion in each of the sworn statements that ". . . it is my understanding that it has been Mill-Tel, Inc.'s policy, practice and/or procedure to refuse to pay its installation technicians overtime compensation . . . ."  *See generally,* Sworn Statements, ¶ 6.  However, Plaintiff Knight's pay records show he received overtime compensation on four different weeks in his short five months of employment, and Plaintiff Knight admitted as much in his deposition.  (Knight Depo. 77:19 – 81:20)  For the week ending June 17, 2010, Plaintiff Knight worked 46 hours and was compensated for 6 hours of overtime; for the week ending July 15, 2010, Plaintiff Knight worked 44 hours and was compensated for 4 hours of overtime; for the week ending August 5, 2010, Plaintiff Knight worked 60 hours and was compensated for 20 hours of overtime; for the week ending August 19, 2010, Plaintiff Knight worked 69 hours and was compensated for 29 hours of overtime.  (Id.)  Therefore, Plaintiff Knight's sworn statement is fraudulent with respect to its assertion that Defendant refused to pay overtime compensation. Even more important for this response, however, is the fact that there can be no single decision, policy or plan to refuse to pay overtime compensation to Installation Technicians if one of the three named plaintiffs did in fact receive overtime compensation for his work as an Installation Technician.

Not only are Plaintiffs dissimilar across geographical boundaries and the actual receipt of overtime compensation, but also across temporal scope.  Allen, Knight and Richard could not possibly have knowledge (and in fact, do not have knowledge) pertaining to Defendant's pay practices during the span of the purported three-year period because they were not employed for that entire time.   Furthermore, the policies in place during the period of their specific employments (and therefore the policies which governed their compensation) were different. Allen was hired on August 2, 2010 and his last day worked was August 31, 2010; therefore, he only worked under the piecerate web-based timekeeping system.  Plaintiff Knight was employed from March 16, 2010 to August 27, 2010; therefore, his compensation was based on the piecerate system and governed by the paper timekeeping and web-based timekeeping systems.  Plaintiff Richard was employed from April 28, 2008 to October 31, 2008; therefore, since February 7, 2009, he was compensated at a piecerate basis using the hours reported on his daily and weekly summaries for payment of overtime compensation. The same is true of the other two former Installation Technicians who submitted sworn statements in support of Plaintiffs' motion for certification.   Lynn Talbott was employed from July 24, 2007 to November 7, 2011; therefore, since February 7, 2009, she was compensated under all three policies (the paper-based timekeeping system, the web-based timekeeping system, and the Blackberry-based timekeeping system) and was compensated on a piecerate basis prior to March 11, 2011, and on an hourly-plus-production-bonus basis from March 11, 2011 to her termination.  (Mallett Declaration, ¶ 12) Dennis Baker was employed from June 23, 2010 to December 30, 2011; therefore, he was also compensated based on all three timekeeping policies and on both the piecerate and hourly-plus-production-bonus basis.  (Mallett Declaration, ¶ 12)  Clearly, the individuals who submitted

sworn statements in support of Plaintiffs' motion for certification are not even similarly situated to each other, let alone to an entire class of putative opt-in plaintiffs.

### III.   Alternatively, if Conditional Certification is Granted, Plaintiffs' Proposed Notice is Improper and the Parties Should be Permitted to Stipulate to a Mutually-Agreeable Notice.

The Court should not proceed to the issue of proper notice because conditional certification should be denied.   Should the Court grant Plaintiffs' motion for conditional certification in whole or in part, however, Defendant respectfully requests that it deny Plaintiffs' requested format and method of notice to putative opt-in plaintiffs and allow the parties an opportunity to confer on a stipulated notice and procedure for distribution.  *See Pivonka v. Board of County Comm'rs of Johnson County, Kansas,* Case No. 04-2598-JWL, 2005 U.S. Dist. LEXIS 17553, at *17 (D. Kan. Jul. 27, 2005) (denying plaintiff's motion for approval of the form of notice to be sent to putative class members without prejudice until counsel have consulted with one another and attempted to resolve or narrow their disputes).  ". . . [A] trial court has a substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989).  In *Hoffman-La Roche*, the Supreme Court recognized, in the context of an ADEA collective action case brought under the same statutory provision as the present FLSA case, 29 U.S.C. §216(b), that "the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice."  *Id*. at 171.   The Court stated that, "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate and informative . . . This procedure may avoid the need to cancel consents obtained in an improper manner."  *Id*. at 172. As discussed below, Plaintiffs' proposed notice suffers from numerous defects and is not fair, accurate and informative in material respects.  As a result, Defendant requests that the parties be

directed to meet and confer in an attempt to agree upon a notice and present any outstanding issues on which agreement cannot be reached to the Court for resolution.

A.       **Plaintiffs failed to establish a willful violation of the FLSA.**

Plaintiffs seek to send notice of the lawsuit to all Installation Technicians employed by Defendant within three years from the date of certification to the present. (Doc. 57, p. 1)  A two-year statute of limitations generally applies to FLSA actions.   29 U.S.C. § 255(a).   The limitations period is extended to three years only if a plaintiff can establish that an employer's proven violation of the FLSA is willful.  29 U.S.C. § 255(a) (emphasis added).  To be entitled to send notice based on a three-year statute of limitations, a plaintiff must present specific facts supporting such a request.  *Cohen v. Allied Steel Buildings, Inc.*, 554 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (explaining that the plaintiff must establish facts supporting a willful violation before sending notice based on a three-year statute of limitations period and stating, "The only reference to any allegedly willful violations of the FLSA by Defendants is a conclusory allegation of willfulness in the Complaint absent any facts to substantiate the same . . .").

Here, Plaintiffs submitted five nearly-identical sworn statements from former Installation Technicians.  Those sworn statements do not allege, let alone establish, facts that would support a three-year willfulness time period.  Indeed, not one sworn statement purports to describe alleged unlawful actions taken in a willful manner.   At best, the sworn statements include conclusory references to Defendant's alleged failure to compensate Plaintiffs for time worked, but those sworn statements contain absolutely no allegations of willfulness.   Moreover, the record clearly reflects that Defendant took several steps to correct any perceived deficiencies in its payroll policies following the *Price* lawsuit.  If anything, this information negates a finding of willfulness.  Accordingly, the notice period, if one is appropriate, is the period two years prior to

the date of any conditional certification order.

      **B.**    **Plaintiffs' proposed notice is inaccurate, incomplete and/or misleading.[5]**

      i.    <u>Plaintiffs' reliance on the FJC is inappropriate.</u>

In this case, Plaintiffs have submitted a proposed notice which they state is "heavily modeled" on examples provided on the Federal Judicial Center ("FJC") website. (Doc. 58, p. 23) Plaintiffs' reliance on the FJC website is misplaced. First, the FJC website identified by Plaintiffs does not contain any proposed notices for an FLSA collective action. Rather, the FJC website contains an example notice for an employment discrimination lawsuit, which is an "opt-out" rather than an "opt-in" procedure as utilized under the FLSA. Secondly, Plaintiffs have made substantial modifications to the FJC notice which render the notice less than neutral and, in some respects, misleading. Plaintiffs cite to three non-FLSA cases to support approval of their proposed notice. (Doc. 58, p. 24, citing *Pierce, Varacallo, and In re: Indep. Energy Holdings PLC Sec. Litig.*) None of these cases was an FLSA collective action. While the notice provided by Plaintiffs may provide a starting point, the Court should allow the parties to confer to arrive at agreement to satisfy the Supreme Court requirement of an accurate and informative notice.

      ii.    <u>Plaintiffs' proposed notice contains factual inaccuracies and biased instructions.</u>

There are several issues in the language of Plaintiffs' proposed notice. These issues – if left unresolved – would convey inaccurate, misleading, and potentially prejudicial information to the putative opt-in plaintiffs. The first inaccuracy is contained in the introductory language of Plaintiffs' proposed notice. The bold-type, all-caps statement that "YOU HAVE UNTIL _____, 2012 TO RESPOND TO THIS NOTICE" could imply that the recipient MUST

---

[5] Defendant is identifying significant deficiencies in the proposed notice in this response to demonstrate the parties should be allowed to confer regarding the content of the notice, particularly since many of the issues have been addressed by the United States District Court for the District of Kansas. Defendant reserves the right to identify further issues in discussions with Plaintiffs' counsel.

respond by filing a consent form (the only method provided to them to "respond") by the deadline. The language should be revised to read, "If you choose to participate in this lawsuit, you must file a consent form by _____, 2012. If you do not wish to be a part of the lawsuit, you do not need to do anything." While this is only a slight variation in language, the effect is great. It serves to present a neutral and accurate portrayal of the recipient's options. Plaintiffs' proposed notice, on the other hand, implies only one option – joining the lawsuit. In addition, the first bullet point should state that Michael Knight and Byron Richard have sued Mill-Tel, Inc., not that "Installation Technicians" have sued Mill-Tel, Inc. To state anything else would imply that this lawsuit is a fully-certified class action, or that all current and former Installation Technicians have joined the lawsuit.

Section 13 of the proposed notice should be titled "To Stay Out of the Lawsuit" and should state, "You are not required to join in this case or to take any action unless you want to do so. It is completely voluntary." The notice should further advise putative opt-in plaintiffs that, "If you do not wish to be a part of the lawsuit, you do not need to do anything." *Gjurovich v. Emmanual's Marketplace, Inc.,* 282 F. Supp. 2d 101, 110-11 (S.D.N.Y. 2003) (court approved notice contained section, "To Stay Out of the Lawsuit"). Plaintiffs' proposed language in this section is not neutral or accurate because it suggests that not opting-in would be more difficult and costly, (i.e., "You'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims."). This language is misleading and must be modified.

Section 14 of the proposed notice improperly suggests the potential for recovery of "additional damages." It also suggests Defendant has been required by the Court to enter into some "promise" to not take "any action" against those who participate in the lawsuit. This language overstates the retaliation protections available to opt-in plaintiffs. While Defendant

certainly understands its obligations in this regard, the implication that Defendant has promised not to take "any action" – regardless of the underlying cause of that action – is inappropriate. The notice should simply state, "Federal law prohibits Mill-Tel, Inc. from taking adverse action against persons because they have exercised their rights under the FLSA to participate in this lawsuit."

Section 15 of the proposed notice inaccurately and misleadingly describes the obligations of an opt-in plaintiff.  For example, it uses language such as, "[t]he lawyers will handle most of the presentation," "[f]rom time-to-time," "for part of a day," and "the attorneys will work with you so that the process is as convenient for you as possible."  This is misleading.  A collective action lawsuit is driven by deadlines and certainly can be inconvenient for both opt-in plaintiffs and Defendant.  In particular, this lawsuit is pending in the District of Kansas, and Plaintiffs purport to represent Installation Technicians from at least four other states.  (Doc. 5, p. 28)  It is reasonable and necessary to include language informing putative opt-in plaintiffs that travel for depositions or trial may be required.  *Hadley v. Wintrust Mortgage Corp.,* Case. No. 10-2574-EFM, 2011 U.S. Dist. LEXIS 113968, at *14 (D. Kan. Oct. 3, 2011).  Furthermore, a neutral and informative notice must contain a neutral description of the obligations of an opt-in plaintiff, such as, "While this lawsuit is pending, you may be required to respond under oath to written questions and/or to provide sworn deposition testimony or trial testimony."  The proposed notice must accurately inform putative opt-in plaintiffs what opting-in entails.  *Creten-Miller v. Westlake Hardware*, No. 08-2351-KHV, 2009 U.S. Dist. LEXIS 60393, at *18 (D. Kan. Jul. 15, 2009) (approving language explaining that assistance involves deposition testimony).

Sections 16 and 17 of the proposed notice contain the following unnecessary, non-neutral statements and should be removed:  "They are experienced in handling similar cases against

15

other employers," and "You do not need to hire your own lawyer because [Plaintiffs' counsel] are working on your behalf.  But, if you want your own lawyer, you will have to pay that lawyer."  These statements imply not only that it will be more burdensome (i.e. expensive) to the putative opt-in plaintiffs to retain their own counsel, but also that the court has made a determination regarding Plaintiffs' counsel's experience level in handling FLSA matters.  Because no such determination has been made, and because the notice should not in any way dissuade opt-in plaintiffs from retaining their own counsel, these statements should be omitted.

Plaintiffs' proposed notice provides incomplete, and in some respects inaccurate, information with respect to fees and costs in Section 18.  There must be some reference to Defendant's potential claim for costs.  *Creten-Miller v. Westlake Hardware*, No. 08-2351-KHV, 2009 U.S. Dist. LEXIS 60393, at *15-16 (D. Kan. Jul. 15, 2009) ("The Court therefore agrees with Westlake that the notice should inform recipients about the possibility that they may be responsible for costs.  Therefore, the end of the second paragraph in Section 2 shall include a statement that, 'If you do not prevail on your claim, court costs and expenses may possibly be assessed against you.'"); *Hadley v. Wintrust Mortgage Corp.,* Case. No. 10-2574-EFM, 2011 U.S. Dist. LEXIS 113968, at *14-15 (D. Kan. Oct. 3, 2011) (notice warning putative opt-in plaintiffs that they may be responsible for costs is appropriate because an award of costs to a prevailing defendant in an FLSA case is clearly possible); *Jurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 110-11 (S.D.N.Y. 2003) (approving language, "You may also be responsible for your proportional share of Plaintiffs' costs associated with this lawsuit other than attorneys' fees, and for potential counterclaims which could be asserted against you by [defendants].").  A fair and accurate notice should inform putative opt-in plaintiffs that they may be liable for a claim for costs.  Similarly, the consent form should contain language that any

putative opt-in plaintiff understands that Defendant may have a claim for costs for which he or she may be responsible.

Finally, the proposed notice should provide contact information for Defendant's counsel in Section 19. *Creten-Miller v. Westlake Hardware*, No. 08-2351-KHV, 2009 U.S. Dist. LEXIS 60393, at *11 (D. Kan. Jul. 15, 2009) ("... the Court sustains Westlake's objection and directs that Section 10 be modified to include defense counsel contact information ..."). Should the Court conditionally certify this action, defendant believes the parties can reach a mutually-acceptable agreement regarding these issues, and requests the Court provide the parties time to confer and submit a stipulation regarding the same.

        iii.    <u>Plaintiffs' proposed consent form contains factual inaccuracies and biased instructions.</u>

The proposed consent form submitted by Plaintiffs should more explicitly disclose that the named plaintiffs –Michael Knight and Byron Richard – will be the opt-in plaintiff's agent for decisions pertaining to the prosecution of the lawsuit. This is particularly necessary to provide full and fair disclosure to putative opt-in plaintiffs because the putative opt-in plaintiffs who wish to pursue a claim have the option, in lieu of joining this lawsuit and relinquishing some level of control over their claims, to maintain complete control over their claims through the filing of an individual lawsuit or engaging in independent settlement negotiations. Secondly, the proposed consent form improperly purports to authorize Plaintiffs' counsel to file the consent form "in this and any subsequent actions that may or may not be filed post decertification, as needed." This language must be omitted because the proposed consent form applies only to the present action and the notice period for opting-in. Finally, Plaintiffs' proposed consent form implies a finding of wrongdoing by the Court. Although the proposed notice purports to inform putative opt-in plaintiffs that the Court has not made any determination on the merits, language in the consent

17

form negates any such information.  For example, the consent form refers to "the Defendant's failure to pay me wages as required under federal law."  No such failure has been determined. To the contrary, it is vigorously contested.  As a result, this language must be omitted from the proposed consent form.

### C. Plaintiffs' proposed notice procedures are inappropriate and unduly burdensome.

#### i. Plaintiffs' request for a posted notice is procedurally inappropriate and unduly burdensome.

Plaintiffs' request for publication of the notice at Defendant's places of business is not warranted and should be denied.  A posted notice does not serve the purpose of a conditional certification notice, which is to notify those individuals who may be similarly situated and who may be eligible to participate as opt-in plaintiffs.  Instead, a posted notice would reach far too broad a class of individuals.   Requiring Defendant to post a notice of this lawsuit "in conspicuous locations where it employs its Installation Technicians, and others with similar job duties and subject to similar compensation policies," as Plaintiffs request, would be no different than requiring Defendant to mail a notice to all of its employees, regardless of their job title or whether they are even potentially similarly situated individuals.  In *Lewis v. ASAP Land Express, Inc.,* Case No. 07-2226-KHV, 2008 U.S. Dist. LEXIS 46362, at *3 (D. Kan. Jun. 12, 2008), the Court stated:

> As to plaintiff's request that the Court order [defendant] to post notice of the collective action in its offices, the Court is not convinced that such notice would facilitate the opt-in procedure.  Specifically, plaintiff's proposal does not account for the consent forms which opt-in plaintiffs must file in order to commence their claims.  *See* 29 U.S.C. § 256(b).  Mailing the notice and consent form together constitutes the most efficient means of providing putative class members the material required to inform them of their rights and allow them to join in the collective action if they choose.  If mailing proves difficult, plaintiff may revisit the issue.

*See also Hadley v. Wintrust Mortgage Corp.,* Case. No. 10-2574-EFM, 2011 U.S. Dist. LEXIS 113968, at *16 (D. Kan. Oct. 3, 2011) (holding workplace notices are cumulative, overreaching and likely to cause confusion; further holding that workplace postings do not provide effective delivery of consent forms).

Here, Plaintiffs have not established the necessity of a posted notice.  Indeed, Defendant is unlikely to have obsolete contact information for its current employees, and posting a notice in the workplace will do nothing to notify those putative opt-in plaintiffs who are no longer employed.  A posted notice would serve only to disrupt the workplace and to provide notice of the lawsuit to an overly-broad class of employees, but it would not facilitate the opt-in procedure.

      ii.    **Plaintiffs' request for telephone numbers, partial social security numbers and dates of birth of putative opt-in plaintiffs is inappropriate and potentially abusive.**

Plaintiffs request not only the names, addresses, dates of employment and location of employment for all persons who worked as Installation Technicians, but also the telephone numbers, partial social security numbers and dates of birth for those individuals.[6]  Plaintiffs cite a string of mostly extra-jurisdictional cases in support of their request for telephone numbers and social security numbers, but a recent case from the District of Kansas addressed these issues.  In *Lewis v. ASAP Land Express, Inc.*, No. 07-2226-KHV, 2008 U.S. Dist. LEXIS 46362, at *3 (D. Kan. Jun. 12, 2008), the Court denied a plaintiff's request for telephone numbers, stating: "As to plaintiff's request for telephone numbers and social security numbers, the Court finds that

---

[6] Plaintiffs' motion specifically acknowledges the settlement agreements and release of claims in two prior lawsuits and states that the motion is "seeking notice only to Installation Technicians who did not opt into the previous litigation or whose release is not effective with respect to a period in which they were not properly paid all overtime compensation due and owing."  (Doc. 58, p.7)  Despite this accurate limitation, Plaintiffs' do not make the same limitation in their request for the names of putative opt-in plaintiffs.  Defendant assumes Plaintiffs' intention was to similarly limit the request for names and information, but to the extent Plaintiffs' request is not so limited, Defendant objects.

plaintiff has not justified discovery of this information."  Plaintiffs argue the receipt of telephone numbers is appropriate because they can "assist with locating workers whose addresses are no longer valid."  (Doc. 58, p. 25)  While this may ultimately be true, there is no evidence at this stage that there are any invalid addresses and, therefore, it is inappropriate to require the production of telephone numbers for all putative opt-in plaintiffs.  Instead, the provision of telephone numbers at this stage would serve only as an invasion of privacy of the putative opt-in plaintiffs, and provide the potential for abuse.  Plaintiffs have requested that the Court order notice by mail and posting at Defendant's locations.  Plaintiffs have not requested (nor should they) permission to mount a telephone campaign to recruit opt-in plaintiffs.  *See Stickle. v. SCI Western Market Support Center, LP,* No. 08-083-PHX-MHM, 2009 U.S. Dist. LEXIS 97735, at * 24 (D. Ariz. Sept. 30, 2009) (rejecting request for telephone numbers and noting that supplying phone numbers would be "a needless intrusion into the privacy of these individuals and their families."); *Hintergerger v. Catholic Health System*, No. 08-cv-380S, 2009 U.S. Dist. LEXIS 97944, at *36 (W.D.N.Y. Oct. 21, 2009) ("… in the interest of privacy, [employer] need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses.").

Finally, Plaintiffs ask the Court to require production of partial social security numbers and dates of birth for the putative opt-in plaintiffs.  Plaintiffs make this request, however, without any basis or support for it.  Indeed, Defendant cannot hypothesize any possible justification for this information.  To the extent Plaintiffs allege this information may assist them in locating putative opt-in plaintiffs, the same arguments asserted above are applicable.  The potential invasion of privacy in producing this information is not outweighed by the *potential* of a handful of invalid addresses.

## IV.     Plaintiffs are not Entitled to Tolling of the Statute of Limitations.

In a summary fashion, Plaintiffs request that the Court enter an order tolling the statute of limitations for putative opt-in plaintiffs during the pendency of their motion for certification. Plaintiffs do this in a one-sentence request in their motion for certification. Plaintiffs provide absolutely no support, argument, or rationalization for this request. On that basis alone, Plaintiffs' request for tolling should be denied. "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Chao v. Virginia Dept. of Transp.,* 291 F.3d 276, 283 (4th Cir. 2002) (citations omitted). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." *Id.* Plaintiffs failed to set forth *any* circumstances justifying equitable tolling in this lawsuit, let alone circumstances to fit within the "quite narrow" category of cases wherein tolling may be appropriate.

## CONCLUSION

Defendant had in place at least three different timekeeping systems during the proposed three-year limitations period and at least two different compensation systems. As a result, Plaintiffs cannot establish any single decision, policy or plan. Furthermore, and regardless of the particular policy at issue, Defendant compensated its Installation Technicians for all hours worked. For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Conditional Certification of FLSA Claims.

Dated this 9th day of April, 2012.

Respectfully submitted,

*s/ Ashley J. Shaneyfelt*

J. Randall Coffey       D. Kan. No. 70141
Ashley J. Shaneyfelt   KS No. 22641
FISHER & PHILLIPS LLP
4900 Main Street, Suite 650
Kansas City, Missouri 64112
TEL:  (816) 842-8770
FAX:  (816) 842-8767
Email:  rcoffey@laborlawyers.com
Email:  ashaneyfelt@laborlawyers.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2012, a copy of the above and foregoing was filed and served on the following pursuant to the Court's ECF system:

Donald N. Peterson
Sean McGivern
WITHERS, GOUGH, PIKE, PFAFF & PETERSON, LLC
O.W. Garvey Bldg., Suite 1010
200 W. Douglas
Wichita, KS 67202
(316) 267-1562 (telephone)
(316) 303-1018 (facsimile)

and

Matthew E. Osman
OSMAN & SMAY, LLP
The Phoenix Building
7930 Santa Fe Drive, Suite 100
Overland Park, KS 66204
(913) 667-9243 (telephone)
(866) 470-9243 (facsimile)

ATTORNEYS FOR PLAINTIFF

*s/ Ashley J. Shaneyfelt*

Attorney for Defendant

KansasCity 245494.2