# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL KNIGHT, et al.,
On Behalf of Themselves and all Others
Similarly Situated,

       *Plaintiffs,*

vs.

MILL-TEL, INC.

       *Defendant.*

Case No. 11-1143-EFM

## MEMORANDUM AND ORDER

Plaintiff Michael Knight, individually and on behalf of others similarly situated, asserts wage and hour claims against Defendant Mill-Tel, Inc., alleging violations of the Fair Labor Standards Act ("FLSA")[1] and the Kansas Wage Payment Act ("KWPA").[2] This matter comes before the Court on the Motion for Class Certification of KWPA Claims (Doc. 80), filed by Plaintiffs Michael Knight and Lynn Talbott pursuant to Fed. R. Civ. P. 23.[3] For the reasons set forth below, the Court grants Plaintiffs' motion for class certification.

---

[1] 29 U.S.C. § 201, *et seq.*

[2] Kan. Stat. Ann. § 44-313, *et seq.*

[3] Former named Plaintiff, Anthony Allen, was dismissed from this case on April 6, 2012. Doc. 70.

## I.     Background

Defendant Mill-Tel, Inc., is a company that provides cable installation services to telecommunications companies by installing products in consumers' homes. Plaintiffs Michael Knight and Lynn Talbott, on behalf of themselves and all others similarly situated, are present or former employees of Defendant. Plaintiffs allege that Defendant failed to pay earned overtime compensation in violation of the FLSA and that Defendant wrongfully withheld or deducted earned wages in violation of the KWPA. In its Memorandum and Order dated July 12, 2012 (Doc. 79), the Court granted Plaintiffs' motion for conditional class certification with respect to their FLSA claims. Plaintiffs now seek class certification with respect to their KWPA claims under Rule 23.

Defendant Mill-Tel, Inc., is Kansas company based in Wichita, Kansas, and also maintains an office in Kansas City, Missouri. Defendant employs Installation Technicians to carry out its installation and service work. Thirty-five Installation Technicians currently work for Defendant, and Defendant employed more than 500 Installation Technicians during the proposed class period from March 29, 2006, to the present.

Defendant used two different systems to pay employees during the proposed class period. Before March 11, 2011, Defendant used a piece rate pay system, which compensated employees for discrete projects performed, but guaranteed a minimum wage. After March 11, 2011, Defendant used an hourly-plus-production-bonus compensation system, under which Installation Technicians earned a set rate for the first forty hours of a workweek, time-and-one-half for all hours worked over forty hours, plus a production bonus as applicable. Defendant described this system as follows:

> The way that it works is they go out and they do their tasks at the jobs and they go into a bucket of available, you know, potential earnings. . . . . They have a guaranteed hourly rate what they're going to make no matter what even if they didn't do these jobs correctly. So, however much time it takes them to do this . . . they take their guaranteed hourly rate times the amount of time that it takes and they figure out what dollar amount that is of payment. Then you have your bucket sitting here of available funds that you could have earned provided you did everything correctly. If that's more than your hourly rate, then you get that as a bonus. If it's less than your hourly rate, then you just get your hourly rate.[4]

Defendant admits that during the relevant period, it has maintained a practice of deducting money from Installation Technicians' compensation for tool purchases, customer complaints, quality-control problems, and for lost or damaged cable equipment. More specifically, Defendant charged Installation Technicians money under the following circumstances: (1) $50.00 deductions for failed Cox quality checks; (2) $25.00 deductions for failed in-house quality checks; (3) $50.00 deductions for exceeding three percent service-call return rates from the customer cable company; (4) $50.00 deductions for each customer complaint; (5) deductions for missing equipment; and (6) deductions for damage to customer property. However, Defendant asserts that its policy changed during the relevant period because in December 2010, it stopped making deductions for company-provided cellular phones.

Plaintiff Michael Knight was employed by Defendant from March 16, 2010, to August 27, 2010. Knight lived and worked predominantly in Kansas City, Missouri. During that time, Defendant deducted $686.68 from Knight's paychecks for tool purchases, a pocket toner purchase, a dish reconnect fee after Knight severed a customer line, and five deductions for failed quality checks. At the conclusion of his employment, Defendant refunded $334.68 to Knight to reimburse him for some returned tools, but without any interest or penalties. On at least two occasions, Defendant deducted $50.00 from Knight's wages for failed quality checks

---

[4] Mallett Dep., Pl.'s Ex. E, Doc. 81-5, at 2.

related to work that Knight performed in Kansas, for which Knight was charged Kansas sales tax.

Plaintiff Lynn Talbott worked as an Installation Technician for Defendant from June 2007 to November 2011. From June 2007 to December 2009, Talbott worked in Defendant's Wichita office. Then, from December 2009 to November 2011, Talbott worked from Defendant's office located in Kansas City, Missouri. Over the course of her employment, Talbott regularly performed installation work in Kansas. Defendant deducted Talbott's pay on numerous instances for failed quality checks while she worked in Wichita and in Kansas City.

## II.     Analysis

**A.     Class Certification Under Rule 23**

    **1.  General Standards Governing Class Certification**

Whether to certify a class is committed to the broad discretion of the trial court.[5] In exercising this discretion, the Court should err on the side of class certification because it has the authority to later redefine or even decertify the class if necessary.[6] In deciding whether to certify, the Court must perform a "rigorous analysis" as to whether the proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[7] Rule 23 does not provide the Court with the authority to conduct a preliminary inquiry into the merits of the lawsuit to

---

[5] *Shook v. El Paso County*, 386 F.3d 963, 967 (10th Cir. 2004).

[6] *Sibley v. Sprint Nextel Corp., et al.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)); *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 115 (D. Kan. 1995)); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

[7] *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982); *see Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 685 (D. Kan. 1994).

determine whether it may be maintained as a class action.[8] The Tenth Circuit, however, has emphasized that the question of class certification involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[9] Although the Court may not evaluate the strength of a cause of action at the class certification stage, it must consider, "without passing judgment on whether plaintiffs will prevail on the merits," whether the requirements of Rule 23 are met.[10]

As the parties seeking class certification, Plaintiffs have the burden to demonstrate under a strict burden of proof that the requirements of Rule 23 are clearly satisfied.[11] In doing so, Plaintiffs must establish that the prerequisites of Rule 23(a) are satisfied and that the proposed class falls under one of the categories described in Rule 23(b).

**2. Class Definition**

In determining whether to certify a class, the Court first addresses the proposed class definition.[12] "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action."[13] Therefore, the definition must be "precise,

---

[8] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Anderson v. City Of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982).

[9] *Shook*, 543 F.3d at 612 (quoting *Falcon*, 457 U.S. at 160); *see also J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[10] *Shook*, 543 F.3d at 612; *see Eisen*, 417 U.S. at 178 (stating that in determining propriety of a class action, the question is not whether plaintiffs state a cause of action or will prevail on merits, but whether the requirements of Rule 23 are met).

[11] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

[12] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 257-58 (D. Kan. 2010).

[13] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (citing Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005)).

objective, and presently ascertainable."[14] Here, Plaintiffs seek certification of the following class:

> All Installation Technicians who worked for Mill-Tel, Inc., in Kansas at any time between March 29, 2006 to the present, whose wages were deducted as a result of performance deficiencies, damage to Mill-Tel property, loss of Mill-Tel property or for any other unlawful purpose.[15]

Defendant argues that the proposed class is both geographically and temporally overbroad, and therefore asks the Court to deny certification.

### a. Plaintiffs' Proposed Class is Not Geographically Overbroad.

First, Defendant argues that the proposed class definition fails because it includes individuals who are not Kansas residents, and therefore, are not subject to the KWPA. Specifically, Defendant asserts that the KWPA does not apply to Knight, who was a Missouri resident working in Defendant's Kansas City, Missouri, office. The Court disagrees.

This Court analyzed and rejected Defendant's argument in *Harlow v. Sprint Nextel Corp.*[16] In *Harlow*, a class of current and former employees of Sprint Nextel Corp. asserted claims for violation of the KWPA.[17] The class plaintiffs alleged that Sprint violated the KWPA by failing to pay them commissions due under the company's Business Incentive Compensation Plan, which included a Kansas choice-of-law provision.[18] Sprint sought judgment on the pleadings, arguing that the KWPA is inapplicable because none of the named plaintiffs lived or worked in Kansas.[19] This Court denied Sprint's motion and held that the KWPA may have

---

[14] *Id.*

[15] Mot. for Class Cert. of KWPA Claims, Doc. 80, at 1.

[16] *Harlow v. Sprint Nextel Corp.*, 574 F. Supp. 2d 1224, 1225 (D. Kan. 2008).

[17] *Id.*

[18] *Id.*

extraterritorial application because, unlike the wage-and-hour statutes in other states, the KWPA lacks any language with jurisdictional or territorial limitations.[20] Simply put, "the KWPA is not limited to employees who live and work in Kansas."[21]

Here, it is evident that both Knight and Talbott performed *some* work in Kansas, which is more than could be said of the plaintiffs who obtained class certification in *Harlow*. Further, Plaintiffs worked for a Kansas employer, and Knight produced a statement of deductions reflecting that he was charged Kansas taxes charged for tools and other items. Because the language of the KWPA is not geographically restricted, the Court follows it prior ruling in *Harlow* and holds that Plaintiffs' proposed class definition is not geographically overbroad.

### b. Plaintiffs' Proposed Class is Not Temporally Overbroad

Second, Defendant argues that the proposed class period is temporally overbroad. Under Kansas law, a five-year statute of limitations applies to claims concerning written contracts, while a three-year limitations period applies to claims regarding oral contracts.[22] Defendants assert that Plaintiffs' KWPA claims arise under an oral contract that is subject to a three-year statute of limitations. Because Plaintiffs filed this action on March 29, 2011, Defendant argues that the three-year statute of limitations bars all claims accruing before March 29, 2008, which falls in the middle of Plaintiffs' proposed class period.

Here, Plaintiffs assert that a five-year statute of limitations applies because their claims arise from a Master Installation, Construction, and Service Agreement ("Master Agreement"), which discusses Defendant's compensation and deduction policies. Defendant first argues that

---

[19] *Id.* at 1226.

[20] *Id.*

[21] *Id.* at 1227.

[22] Kan. Stat. Ann. § 60-511 (five-year statute of limitations for breach of written contract); Kan. Stat. Ann. § 60-512 (three-year statute of limitations for oral contract claims).

no written contract can governs this action because it compelled its employees to sign an acknowledgment form upon receiving its employee handbook, which provided,

> I agree that my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either Mill-Tel., Inc. or myself. I understand that neither the Employee Handbook nor any other written or oral statements by Mill-Tell., Inc. or its representatives are contracts of employment. No employee of Mill-Tel., Inc., except the president, has any authority to enter into any agreement for employment for any specified period of time, or to make an agreement contrary to the foregoing, and no such agreement has been made.[23]

Plaintiff argues that this provision merely establishes at-will employment and excludes the employee's right to a specified term of employment. The Court agrees. While Defendant's handbook acknowledgement form affirms an at-will employment relationship terminable by either party at any time, its content and context reveal an intent to exclude an "agreement for employment for any specified period of time." This provision is silent with respect to Plaintiffs' obligations and duties during the term of their at-will employment, and the provision does not negate or change the existence of other written contracts regarding compensation and deduction policies. Accordingly, the handbook acknowledgment form does not affirmatively foreclose other written agreements concerning employees' compensation, including the Master Agreement.

Second, Defendant argues that the action falls under the three-year statute of limitations for oral contracts because Plaintiffs cannot point to a provision of the Master Agreement breached by unlawful wage withholdings. The Court disagrees. As Plaintiffs point out, the Master Agreement extensively discusses the method of compensation, and "[a]n employer's withholding of an employee's wages without written authorization pursuant to K.S.A. 44-

---

[23] Employee Handbook Acknowledgement, Pl.'s Ex. E, Doc. 109-6, at 2.

319(a)(3) constitutes a breach of the employment contract."[24] Accordingly, the Court finds that Plaintiffs' claims generally arise out of the Master Agreement, and therefore, a five-year statute of limitations applies.[25] For these reasons, the Court finds that Plaintiffs' proposed class definition is not temporally overbroad. Accordingly, Plaintiffs' proposed class definition is sufficient, and the Court proceeds to analyze the additional requirements under Rule 23.

### 3. Prerequisites Under Rule 23(a)

Rule 23(a) provides the following prerequisites for class certification: "(1) Numerosity: the class is so numerous that joinder of all members is impracticable; (2) Commonality: there are questions of law or fact that are common to the class; (3) Typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) Adequacy of Representation: the representative parties will fairly and adequately represent the interests of the class."[26]

#### a. Numerosity

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must establish that the class is so numerous so as to make joinder impracticable.[27] Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.[28] Courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a "good faith estimate of at least 50 members is a sufficient size to

---

[24] *Temmen v. Kent Brown Chevrolet Co.*, 605 P.2d 95, 99 (Kan. 1980).

[25] Kan. Stat. Ann. § 60-511.

[26] *Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006) (citing Fed. R. Civ. P. 23(a)).

[27] *Id.* at 1162; Fed. R. Civ. P. 23(a)(1).

[28] *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

maintain a class action."[29]  Here, Plaintiffs establish that Defendant currently employs thirty-five Installation Technicians and that it employed over 500 Installation Technicians during the proposed class period.  For the purposes of class certification, Defendants do not dispute that Plaintiffs satisfy the numerosity requirement.  For these reasons, the Court finds that Plaintiffs have established the numerosity required to maintain a class action.

### b. Commonality

Rule 23(a)(2) requires Plaintiffs to show that questions of law or fact are common to the class, that is, members of the putative class "possess the same interest and suffer the same injury."[30]  This inquiry requires the Court to find only whether common questions of law or fact exist.  Unlike the Court's analysis under Rule 23(b)(3), this inquiry does not require a finding that such questions predominate.[31]  Plaintiffs claim that the commonality requirement is satisfied because Defendant uniformly applied its allegedly unlawful deduction policy among all Installation Technicians.

Defendant asserts that commonality fails because both its compensation and deduction policies changed during the proposed class period, thereby creating different legal and factual issues depending upon the period of employment for each class member.  Defendant first points to a single change in its deduction policy, namely, that Defendant made deductions for company-owned cellular phones until it ceased that practice in December 2010.  However, it is uncontroverted that Defendant's policy allowed deductions for a wide range of reasons, including tool purchases, customer complaints, and quality control problems.  While different class members may have suffered pay deductions for different reasons under the policy, all of the

---

[29] *See Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978); *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).

[30] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

[31] *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991).

class members share a common legal theory that Defendant's deduction policy violates the KWPA. Accordingly, the Court finds that commonality survives even though Defendant omitted one reason for pay deduction under its policy in December 2010.

Defendant also alleges that commonality fails because, in March 2011, Defendant changed its compensation policy from a piece rate system to an hourly-plus-production-bonus system. As Plaintiffs point out, however, the change in Defendant's compensation policy creates a distinction without a difference as it relates to Plaintiffs' KWPA claims. Under Defendant's former piece rate system, employees earned set amounts for each project subject with a guarantee of a minimum wage, subject to the deduction policy. Likewise, Defendant's own description of its hourly-plus-production-bonus system provides that employees earn set amounts for each project with a guaranteed minimum wage, subject to deductions for certain problems. While the language used to describe each plan differs, both guarantee employees a minimum wage rate, both provide additional compensation based upon projects performed, and both were subject to Defendant's deduction policy. Accordingly, any determination regarding whether Defendant's deduction policy violates the KWPA will apply to class members who earned compensation under either pay system. Therefore, the Court finds that Plaintiffs have established commonality.

### c. Typicality

Rule 23(a)(3) requires that the representative plaintiff possess the same interests and suffer the same injuries as the proposed class members.[32] "It is well established that differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative[s] and class members are based on the same legal or remedial

---

[32] Fed. R. Civ. P. 23(a)(3); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).

theory."[33] The representative plaintiffs' interests need not be identical to those of the class members,[34] but they must not be "significantly antagonistic" to the claims of the proposed class.[35] Even where individual issues abound among class members, this Court has found typicality when a named plaintiff's KWPA claim proceeds under the legal theory that the employer's compensation system failed the requirements of the KWPA.[36]

Defendant argues that typicality fails because one of the proposed Lead Plaintiffs, Lynn Talbott, lacks party status to file the motion or to serve as a class representative. The Court disagrees. On December 8, 2011, Lynn Talbott executed a document entitled Consent to Join, which provided that "**I hereby consent to become a party plaintiff** seeking unpaid wages and overtime in the above-captioned matter."[37] At that time, Plaintiffs had asserted claims under both the FLSA and the KWPA. On December 29, 2011, former Lead Plaintiff Anthony Allen submitted a Notice of Consent to Join Lynn Talbott, and on the same date, the Court added Lynn Talbott per the Notice of Consent to Join. For these reasons, the Court finds that Lynn Talbott constitutes a party-plaintiff in this case and that Plaintiffs have satisfied the typicality requirement under Rule 23(a).

---

[33] *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 689 (D. Kan. 2009) (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

[34] *Stricklin*, 594 F.3d at 1198 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)).

[35] *Olenhouse*, 136 F.R.D. at 680; *see also Stricklin*, 594 F.3d at 1198–99 ("Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.").

[36] *Garcia*, 255 F.R.D. at 689.

[37] Notice of Consent, Doc. 38 (emphasis in original).

### d. Adequacy of Representation

Pursuant to Rule 23(a)(4), a representative plaintiff must show that he or she will fairly and adequately protect the interests of the class.[38] To satisfy this requirement, the representative plaintiff must be a member of the class he or she seeks to represent, and must show that (1) their interests do not conflict with those of the class members and (2) that they will be able to prosecute the action vigorously through qualified counsel.[39] To defeat class certification, a conflict must be fundamental and go to specific issues in controversy.[40] A fundamental conflict exists where some members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members.[41] Minor conflicts will not defeat class certification.[42]

Here, there is no evidence that Micheal Knight or Lynn Talbott have any potential conflict with other members of the class. Defendants do not dispute that Plaintiffs' counsel is experienced and able to manage class litigation. In fact, Defendants affirmatively concede that Plaintiffs have established adequacy of representation for the purpose of class certification. Accordingly, the Court finds that Plaintiffs have satisfied the requirement concerning adequacy of representation.

---

[38] Fed. R. Civ. P. 23(a)(4).

[39] *E. Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

[40] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010).

[41] *Id.*

[42] *Id.*

### 4. Requirements Under Rule 23(b)

After satisfying the prerequisites under Rule 23(a), Plaintiffs must demonstrate that the proposed class action fits within one of the three categories described in Rule 23(b). In this case, Plaintiffs seek to proceed under Rule 23(b)(3), which addresses situations where "class action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situation, [but] may nevertheless be convenient and desirable."[43] Accordingly, Rule 23(b)(3) "invites a close look at the case before it is accepted as a class action."[44]

Rule 23(b)(3) provides that a class action may be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."[45] The Rule lists four non-exhaustive factors for the Court to consider regarding the predominance and superiority criteria: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.[46]

#### a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,"[47] a far more demanding standard than the

---

[43] *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 615 (1997).

[44] *Id.*

[45] Fed. R. Civ. P. 23(b)(3).

[46] Fed. R. Civ. P. 23(b)(3)(A)-(D).

commonality requirement of Rule 23(a). The predominance requirement, then, requires more than a common claim; issues "common to the class must predominate over individual issues."[48] "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual."[49] "If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question."[50] "If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question."[51]

Defendant's challenge to predominance is limited to its commonality and typicality arguments, which the Court rejected above. Further, this Court has held that common questions of law and fact predominate when class members would necessarily rely upon the same evidence to prove that an employer's compensation system violated the KWPA.[52] Here, all class members will point to deductions under a single compensation and deduction policy. Although each Plaintiff may have suffered deductions for different reasons leading to differing amounts, individual damage questions do not defeat predominance so long as the issue of liability remains common to the whole class.[53] The Court finds that legal and factual questions common to the class predominate over questions affecting individual members.

---

[47] *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

[48] *Id.*

[49] *Id.* (citations omitted).

[50] *Id.*

[51] *Id.*

[52] *Id.* at 691.

[53] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 676-77 (D. Kan. 2004).

### b. Superiority

Rule 23(b)(3) requires a plaintiff to establish that a class action is a preferable method to resolve its dispute.[54] Where individual claims are similar, a class action may be superior to discrete actions that could be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation."[55] As discussed in the commonality and predominance analyses above, Plaintiffs' claims are substantially similar, rely upon much of the same evidence, and will require many of the same witnesses. Therefore, the Court finds that a single class action is a preferable and superior method to duplicative litigation by individual parties.[56]

### 5. Conclusion

Based on the foregoing, the Court concludes that Plaintiffs' proposed class satisfies the requirements of Rule 23. Accordingly, the class will be certified with respect to Plaintiffs' KWPA claims, and Michael Knight and Lynn Talbott are appointed as class representatives.

## B. Appointment of Class Counsel Under Rule 23(g)

"An order certifying a class must also appoint class counsel that will adequately represent the interests of the class."[57] In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

---

[54] *Wallace B. Roderick Revoc. Living Tr.*, 2012 WL 1059882, *8 (D. Kan. Mar. 28, 2012).

[55] *In re Universal Serv.*, 219 F.R.D. at 679.

[56] *See Garcia*, 255 F.R.D. at 692 (citing Fed. R. Civ. P. 23(g)(1)).

[57] *Amchem Prod.*, 521 U.S. at 615.

the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.[58]

Plaintiffs are presently represented by Withers, Gough, Pike, Pfaff & Peterson, LLC ("Withers Gough"), and Osman & Smay, LLP. Defendant does not oppose Plaintiffs' motion for their current attorneys to serve as co-lead class counsel. After reviewing the record, the Court is satisfied that Plaintiffs' attorneys meet the criteria of Rule 23(g) and will adequately represent the interests of the class as counsel. Plaintiffs' counsel has significant experience in handling class actions involving wage and hour claims. Accordingly, the Court will appoint Plaintiffs' attorneys as co-lead class counsel for this action.

## C. Notice Pursuant to Rule 23(c)(2)(B)

Under Rule 23(c)(2)(B), when a court certifies a class under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[59] Plaintiffs have provided a Proposed Notice as an exhibit to their motion for class certification. Defendant makes several specific objections to the proposed notice, which are addressed below.

1. As a preliminary matter, Defendant argues that the proposed notice relates to a class that is geographically and temporally overbroad. As set forth above, however, the Court addressed and rejected each of these arguments in its discussion of the class definition. Accordingly, the Court overrules Defendant's objection.

2. Defendant argues that a table on the first page of the Proposed Notice is misleading. That table explains "Your Legal rights and Options in This Lawsuit," and provides options of "Do Nothing" or "Ask to Be Excluded." Defendant suggests that the option, "Do

---

[58] Fed. R. Civ. P. 23(g)(1)(A).

[59] Fed. R. Civ. P. 23(c)(2)(B).

Nothing" should be modified to say, "Do Nothing and Stay in the Lawsuit." However, the words, "Stay in this lawsuit," appear in the adjoining field that corresponds with the option, "Do Nothing." The Court finds that the table is sufficiently clear to apprise recipients of their rights, and Defendant's objection is overruled.

3. Defendant next objects to Section 4 of the Proposed Notice. That section includes a title, "Why is this lawsuit a class action?" followed by a representation that there may be more than 500 individuals in the class. Defendant argues that Plaintiffs arrive at such a large number because their class definition is geographically and temporally overbroad. For the reasons articulated in the class-definition discussion above, the Court overrules Defendant's objection.

4. Defendant objects to Section 14 of the Proposed Notice, titled "Why would I ask to be excluded?" Plaintiffs only suggest one scenario under which a putative class member may want to opt out: if they have already initiated, or plan to initiate, a separate lawsuit. According to Defendant, this statement may imply to laypeople that they should remain in the class unless he or she has already initiated a separate lawsuit. Because Section 14 substantially tracks the language of FJC model notice provisions, the Court overrules Defendant's objection.[60]

5. Defendant objects to Section 15 of the Proposed Notice, titled "How do I ask the Court to exclude me from the Class?" Defendants complain that Plaintiffs do not indicate whether the notice includes a self-addressed and stamped envelope, which may discourage putative class members from opting out of this action. Because Section 15 closely tracks the approved language from the FJC model notice provision, the Court overrules Defendant's objection.[61]

---

[60] *See e.g., Hadley v. Wintrust Mortg. Corp.*, 2011 WL 1118774, *3 (D. Kan. Oct. 3, 2011).

[61] *Id.*

6. Defendant objects to Section 22, titled "Do I have to come to trial?" That section provides, "You do not need to attend the trial. Class Counsel will present the case for the Plaintiffs, and Mill-Tel, Inc. will present the defenses. You, or your own lawyer, are welcome to come at your own expense."[62] Defendant argues that this statement is inaccurate because it will likely subpoena many class members to testify as witnesses at trial. Consistent with the Court's Memorandum and Order certifying the class with respect to Plaintiffs' FLSA claims in this case,[63] the Court agrees that it is reasonable and necessary to include language informing Plaintiffs that travel for depositions and trial may be required, and the Court therefore sustains this objection in that respect. The Court orders that Section 22's language be revised as follows: "The lawyers will handle most of the presentation of the case. While this suit is pending, however, you may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing, or trial, for which travel may be required."[64]

7. Finally, Defendants object to Section 23, titled "Will I get money after the trial?" The Proposed Notice provides, "If the Plaintiffs obtain money or benefits as a result of the trial or a settlement, you will be notified about how to participate. We do not know how long this will take."[65] Defendants complain that this provision fails to suggest that Plaintiffs may not recover anything at trial. The language in Section 23 is conditional in nature, which inherently implies that Plaintiffs may not prevail at trial. Additionally, this language was directly adapted

---

[62] Proposed Notice, Pl.'s Ex. 15, Doc. 81-15, at 8.

[63] Memorandum & Order, Doc. 79, at 13.

[64] *See Wass v. NPC Int'l, Inc.*, 2011 WL 1118774, *10 (finding that it is reasonable to inform potential class members that travel may be required).

[65] Proposed Notice, Pl.'s Ex. 15, Doc. 81-15, at 8.

from the FJC model notice, which this Court has generally approved.[66] Accordingly, the Court overrules Defendant's objection.

**IT IS ACCORDINGLY ORDERED** that Plaintiffs' Motion for Class Certification of KWPA Claims (Doc. 80) is hereby **GRANTED**. Plaintiffs Michael Knight and Lynn Talbott are designated as class representatives, and their counsel, Withers, Gough, Pike, Pfaff & Peterson, LLC, and Osman & Smay, LLP, are designated as class counsel. Defendant is ordered to provide Plaintiffs with the names, addresses, and telephone numbers for all Installation Technicians who worked in Kansas at any time from March 29, 2006, to the present, for the purpose of mailing notice. Plaintiffs proposed notice is approved with the changes stated above, and Plaintiffs are authorized to mail the revised notice to class members.

**IT IS SO ORDERED**.

Dated this 29th day of July, 2013.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[66] *See Hadley*, 2011 WL 1118774 at *3.